UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK CROFT,<br><br>Defendant | Criminal No. 20cr10330<br><br>Violations:<br><br>Count One: Tampering with a Consumer Product<br>(18 U.S.C. § 1365(a)(4))<br><br>Count Two: Acquiring a Controlled Substance by Fraud, Deception and Subterfuge<br>(21 U.S.C. § 843(a)(3))<br><br>Forfeiture Allegation:<br>(21 U.S.C. § 853) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant, MARK CROFT ("CROFT"), was a resident of West Boylston, Massachusetts.

2. Between June 29, 2005 and February 17, 2016, CROFT was a registered nurse, licensed to practice in Massachusetts.

3. From on or about November 23, 2015 to on or about January 14, 2016, CROFT worked at Hospital A in Massachusetts. On December 5, 2015, CROFT entered into a Voluntary Agreement Not to Practice with the Massachusetts Board of Registration in Nursing. Nonetheless, CROFT did not inform Hospital A that he had voluntarily agreed not to practice. CROFT worked shifts in Hospital A's Emergency Department between November 23, 2015 and January 14, 2016. During this time, Hospital A's Emergency Department treated an average of

1

approximately 125 patients per day, including patients in need of emergency pain relief medication.

4. Hydromorphone and meperidine were both Schedule II controlled substances. Hydromorphone and meperidine were opioids used for pain relief and were available in various forms, including injectable formulations. At Hospital A, hydromorphone and meperidine were administered using carpujects. A carpuject is a syringe device used for the administration of injectable fluid medication.

CROFT's Handling of Hydromorphone and Meperidine in Hospital A's Emergency Department

5. While working at Hospital A's Emergency Department, CROFT had access to controlled substances and administered controlled substances – including hydromorphone and meperidine – to patients receiving treatment for various ailments and in need of pain relief.

6. Beginning at least on or about January 5, 2016 and continuing through on or about January 14, 2016, CROFT tampered with carpujects containing controlled substances, including hydromorphone and meperidine, by accessing the automated dispensing machine ("ADM") in the medication room within Hospital A's Emergency Department. CROFT used his credentials to access the medication in the ADM and remove carpujects of hydromorphone and meperidine from the ADM. He then used syringes he obtained from elsewhere in the Emergency Department to puncture the hydromorphone and meperidine carpujects and remove portions of those controlled substances for his own use. CROFT later put the tampered-with, less-than-full carpujects back in the ADM where they remained available for other patients at Hospital A's Emergency Department. CROFT took steps to conceal his conduct by using his credentials to "cancel" the transactions in the ADM, making it appear that no controlled substances had been removed from the carpujects.

7.      Between on or about January 5, 2016 and on or about January 14, 2016, CROFT removed hydromorphone and meperidine carpujects from the ADM in the manner described immediately above and used a syringe to remove a portion of those controlled substances for his own use.  On more than one occasion, CROFT replaced the removed controlled substance with a different solution.  CROFT did this in an effort to make it appear that the volume of controlled substances in the carpujects remained at a normal level when, in truth, that was not the case.  By replacing the removed controlled substance with a different solution, CROFT diluted the controlled substances in the carpujects to the point where, in two cases, the controlled substances were only 13% of their declared concentration.  CROFT took steps to conceal his conduct by using his credentials to make it appear (1) that he had returned the carpujects he had removed and (2) that the controlled substances in the carpujects were available in their pure form and full volume to be used on other patients.

8.      Patient 1 was a 62 year-old male who was admitted to Hospital A's Emergency Department on January 10, 2016.  CROFT was assigned to care for Patient 1.   Patient 1's medical file included no physician orders for hydromorphone or any indication that CROFT or any other provider administered hydromorphone to Patient 1.  Despite this, on or about January 10, 2016, CROFT used his credentials to access the ADM in Hospital A's Emergency Department to remove a carpuject containing hydromorphone for Patient 1.  CROFT then used a syringe to puncture the carpuject and remove hydromorphone for his own use.  He then replaced the removed hydromorphone with saline.  CROFT later returned the carpuject to the ADM, where it was available to be used on other patients in Hospital A's Emergency Department.  As a result of CROFT's actions, the hydromorphone remaining in the carpuject was only 13% of its declared concentration.

9. Patient 2 was a 50 year-old male who was admitted to Hospital A's Emergency Department on January 4, 2016. CROFT was assigned to care for Patient 2. Patient 2's medical file included no physician orders for meperidine or any indication that CROFT or any other provider administered meperidine to Patient 2. Despite this, on or about January 5, 2016, CROFT used his credentials to access the ADM in Hospital A's Emergency Department to remove a carpuject containing meperidine for Patient 2. CROFT then used a syringe to puncture the carpuject and remove meperidine for his own use. CROFT later returned the meperidine carpuject to the ADM, where it was available to be used on other patients in Hospital A's Emergency Department.

## COUNT ONE
Tampering with a Consumer Product
(18 U.S.C. § 1365(a)(4))

The United States Attorney alleges:

10. The United States Attorney re-alleges and incorporates by reference paragraphs 1-9 of this Information.

11. On or about January 10, 2016, in the District of Massachusetts, the defendant,

MARK CROFT,

with reckless disregard for the risk that another person would be placed in danger of death or bodily injury, and under circumstances manifesting extreme indifference to such risk, did tamper with a consumer product that affected interstate commerce, to wit, a carpuject containing hydromorphone and the labeling of, and container for, such product, by using a syringe to remove hydromorphone from that carpuject for his own use, replacing that removed hydromorphone with saline, and then returning that diluted hydromorphone carpuject to the ADM to be available for use on other patients in Hospital A's Emergency Department.

All in violation of Title 18, United States Code, Section 1365(a)(4).

## COUNT TWO
Acquiring a Controlled Substance by Fraud, Deception and Subterfuge
(21 U.S.C. § 843(a)(3))

The United States Attorney further alleges:

12. The United States Attorney re-alleges and incorporates by reference paragraphs 1-9 of this Information.

13. On or about January 5, 2016, in the District of Massachusetts, the defendant,

MARK CROFT,

did knowingly and intentionally acquire and obtain meperidine, a Schedule II controlled substance, by misrepresentation, fraud, deception, and subterfuge, in that the defendant, while working as a nurse in Hospital A's Emergency Department, did divert for his own use meperidine intended for patients of Hospital A's Emergency Department.

All in violation of Title 21, United States Code, Section 843(a)(3).

## DRUG FORFEITURE ALLEGATION
(21 U.S.C. § 853)

14. Upon conviction of the offense in violation of Title 21, United States Code, Section 843, set forth in Count Two, the defendant,

MARK CROFT,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

15. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 21, United States Code, Section 853.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Patrick M. Callahan*
     PATRICK M. CALLAHAN
     Assistant U.S. Attorney

Date: December 28, 2020